

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TYSON RICHBURG,

    Petitioner,

v.                                       CRIMINAL ACTION NO. 4:18-cr-43

UNITED STATES OF AMERICA,

    Respondent.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Tyson Richburg's ("Petitioner") Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 45. The Government opposed the motion, and Petitioner filed a reply. ECF Nos. 51, 54. Having been fully briefed, this matter is ripe for judicial determination. For the following reasons, Petitioner's Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On June 11, 2018, a federal grand jury returned a seven-count indictment charging Petitioner with possession with intent to Distribute and Distribution of Heroin, in violation of Title 21, U.S.C. § 841(a)(1) (Counts One through Five); Felon in Possession of a Firearm, in violation of Title 18, U.S.C. § 922(g)(1) (Count Six); and Possession of a Firearm in Furtherance of Drug Trafficking in violation of Title 18, U.S.C. § 924(c)(1) (Count Seven). ECF No. 31. On August 15, 2019, Petitioner pleaded guilty to counts Five and Seven. ECF No. 19. According to the Presentence report ("PSR"), Petitioner was responsible for 13.54 grams of cocaine and 54 grams of heroin. ECF No. 31. Petitioner was determined to be a criminal history category III with five criminal history points. On August 15, 2018, Petitioner was sentenced to 60 months and one day

1

incarceration and three years of supervised release on Counts Five and Seven. ECF No. 35.

Petitioner, age 39, is currently incarcerated at Petersburg Low FCI in Virginia, a low security federal correctional institution. ECF No. 45. While at FCI Petersburg Low, Petitioner has been working and taking some classes. ECF No. 45 at Exhibit 6. Medical records from March 3, 2020, indicate that Petitioner was enrolled in a class, which was noted as being helpful in dealing with his mental health issues. *Id.* Petitioner has received one disciplinary infraction for possessing cigarettes in October 2019. *Id.* On April 20, 2020, Petitioner made a written request for compassionate release to the Warden at FCI Petersburg Low. ECF No. 45 at Exhibit 2. The Warden denied Petitioner's request on May 1, 2020.

On May 26, 2020, Petitioner filed a *pro se* motion for compassionate release. ECF No. 42. On July 10, 2020, Petitioner, through counsel, filed a motion for compassionate release citing a history of Post-Traumatic Stress Disorder (PTSD) and major depressive disorder, which Petitioner argues both weaken his immune system and thereby place him at a greater risk should he contract COVID-19. ECF No. 45. Petitioner recognizes that he does not suffer from physical health problems. *Id.* Petitioner requests that this Court allow him to finish out the remainder of his sentence on home confinement. *Id.*

On July 27, 2020, the Government opposed the motion. ECF No. 51. Petitioner filed a reply on July 31, 2020. ECF No. 54. Petitioner's medical records were filed under seal. ECF Nos. 47–48. Petitioner is scheduled for release on July 8, 2022.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.*

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see*

3

*also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

**A. The Exhaustion Requirement**

The Court finds that Petitioner did not exhaust his administrative remedies prior to bringing his motion with the Court. On April 20, 2020, Petitioner made a written request for compassionate release to the Warden at Petersburg Low. ECF No. 45 at Exhibit 2. On May 1, 2020, the Warden returned the form to the Petitioner because it did not have the requisite information. The Government argues that the Petitioner used an inmate "Request to Staff" form and that the form was returned to Petitioner informing him that his request did not contain the requisite information for Compassionate Release. ECF No. 51. However, Petitioner argues that the Warden's response was not a proper denial of Petitioner's request for compassionate release. ECF No. 45 at Exhibit 2. This Court finds that the Petitioner did not exhaust his administrative remedies because he did not file a proper request. However, the Court, as consistent with its previous opinions, can waive the exhaustion requirement given the COVID-19 pandemic and the catastrophic health

4

consequences it has for inmates with underlying health conditions. *See United States v. Poulios*, N. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. April 21, 2020); *United States v. Casey*, No. 4:18-cr-4, 2020 WL 2297184, at *2 (E.D. Va. May 6, 2020); *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *Zukerman*, 2020 WL 1659880, at *3; *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *2. Accordingly, this Court waives the exhaustion requirement here.

### B. Compassionate Release

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to justify his immediate release. According to Petitioner's motion and PSR, Petitioner was diagnosed with Dysthymic Disorder and Adjustment Disorder with anxious mood, Mood Disorder, Impulse Control Disorder, PTSD, R/O Bipolar Disorder, and R/O Personality Disorder. ECF Nos. 45, 22. Petitioner was hospitalized for psychiatric reasons in 2008 and 2014. Petitioner is currently prescribed ferrous gluconate (iron), mirtazapine, and sertraline. ECF No. 45. Petitioner continues to suffer from PTSD and depressive disorder and has experienced depression, headaches, anxiety, nightmares, and other related symptoms. *Id.* Petitioner states that he does not have underlying physical comorbidities that are commonly associated with vulnerability to COVID-19, such as heart disease, diabetes, hypertension, or asthma. However, Petitioner argues that his mental illnesses have been found to weaken the immune system, thereby increasing his vulnerability should he contract COVID-19. ECF No. 45. Notably, Petitioner points to scientific evidence, declarations for other cases, and statements from psychiatrists which show that mental illnesses, like PTSD, generate chronic stress which can cause "inflammation of the lungs and impairs respiration." ECF No. 45 at Exhibit 7.

The Court does not find that Petitioner has set forth extraordinary and compelling reasons

5

to justify his release. First, Petitioner does not show a particularized susceptibility to COVID-19. While Petitioner suffers from extensive mental illnesses, Petitioner's medical records do not indicate any underlying physical health issues that place Petitioner at a higher risk for serious illness if he contracts COVID-19. ECF No. 45. Moreover, although PTSD is a serious condition, it is not recognized by the CDC as a condition which places an individual at an increased level of risk.[1] Petitioner's own medical records, filed under seal, state that he does not currently have any of illnesses recognized by the CDC which place an individual at an increased level of risk. ECF No. 48. Although Petitioner pointed to evidence showing how PTSD can substantially weaken the immune system, Petitioner did not provide any evidence to show that Petitioner's own immune system or physical health is negatively impacted due to his mental illnesses. Finally, Petitioner did not provide evidence that he has developed any of the physical ailments, such as lung inflammation, stemming from his mental health which would place him at an increased risk.

Second, while the Court understands the magnitude of the COVID-19 pandemic and its effect on prisons, the pandemic alone does not warrant compelling and extraordinary reasons for the release of all inmates. *See United States v. Carter*, No. 2:19-CR-00078, 2020 WL 3458598, at *5 (S.D.W. Va. June 25, 2020) (noting that while any number of COVID-19 cases within a prison is of great concern, "a generalized assertion of the existence of the pandemic alone cannot independently justify compassionate release"). Federal courts around the country have found that the pandemic may pose extraordinary and compelling reasons for petitioners with underlying health conditions which substantially increases the risk of severe illness if they contract COVID-19. *United States v. Zukerman*, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020); *United States v. Rodriguez*, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html

6

CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the individuals in the above cases, Petitioner has failed to identify compelling and extraordinary reasons to justify his release.

Finally, the § 3553(a) factors weigh against Petitioner's compassionate release. Petitioner's criminal history and the seriousness of his conduct remain unchanged. Petitioner was convicted of a drug trafficking crime and the possession of a firearm in furtherance of that crime. Before this crime, Petitioner was convicted of possession of more than one kilogram of marijuana in Mississippi. ECF No. 31 at 8. Also, while Petitioner was serving his post-imprisonment probation for this offense, Petitioner absconded and fled to Washington, D.C. Once in D.C., Petitioner was arrested for being a felon in possession of a firearm. *Id.* Furthermore, while on bond for the D.C. charge and under supervision from his Mississippi conviction, Petitioner began selling heroin in Williamsburg, VA while armed. This course of conduct resulted in his conviction and sentence presently before the Court. *Id.* at 5-9. While at FCI Petersburg Low, Petitioner has received one disciplinary infraction for possessing cigarettes in October 2019. The Petitioner's criminal history and his displayed disinterest in following court rules, state and federal, make him unlikely to remain crime free if released to home confinement. On the other hand, while at FCI Petersburg Low, Petitioner has completed educational courses and worked in the dining room. ECF No. 45 at Exhibit 6. Moreover, medical records from March 3, 2020, indicate that Petitioner was enrolled in a class, which was noted as being helpful in dealing with his mental health issues and has been receiving proper medications. *Id.* at Exhibit 5. The Court finds Petitioner's immediate release, or request for home confinement, is inappropriate at this time.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Newport News, Virginia
October 14, 2020

/s/
Raymond A. Jackson
United States District Judge